bank bills, United States notes, treasury notes, gold and silver coin, of the amount and value of five hundred thousand dollars ($500,000), and wrongfully converted the same to their own use, to the damage of the plaintiff" in the sum of $500,000. I am of opinion that this count should be made more definite and certain. It is possible that the conversion of this property constituted only a single transaction, but that is highly improbable. It is not alleged to have been converted all on the same day, but during a period covering nearly 13 years. Various kinds of property are involved, and the amount is very large. The reasonable inference is that this wrong was not a single act of conversion, but many acts at different times, quite remote and disconnected from one another. The count should therefore be made more definite and certain with respect to the time, and with respect to whether it is claimed that the property was converted by a single act or transaction, and, if there was more than one conversion, the causes of action should be separately stated and numbered.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and the motion granted, as to the second cause of action, as indicated in this opinion. All concur.

(118 App. Div. 822)

MUTUAL LIFE INS. CO. OF NEW YORK v. McCURDY.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

1. CORPORATIONS—OFFICERS — ACCOUNTING — COMPLAINT — DEFINITENESS AND CERTAINTY.

The suit being in equity against a fiduciary for an accounting, the complaint in an action by an insurance company against one who was its president and one of its trustees, stating his duty under plaintiff's charter, practically what the law would impose, alleging that by virtue of his office he personally and through his agents, from time to time, received and acquired the custody and control in plaintiff's behalf of large sums of money belonging to it in the amounts and at times unknown to plaintiff; that large sums so received by defendant were taken by him, or caused or knowingly permitted by him to be taken, from plaintiff's treasury, through a system of false and fraudulent bills and vouchers; that he delivered, or caused to be delivered, large portions of the moneys received by virtue of his office to G., as his agent, from which G. at his direction from time to time made large disbursements, retaining the balance as agent of defendant; that many of the disbursements were unauthorized and for unlawful purposes, but that as to the nature, object and amounts of the great majority of said expenditures and disbursements, or as to whether any of the sums so received by defendant remain in his hands, or the hands of any servant of his, plaintiff is without knowledge or information, or means of obtaining knowledge or information, is sufficiently definite and certain.

2. SAME—JURISDICTION.

Equity has jurisdiction to require an accounting by one into whose custody or under whose control, as president and trustee of a company, property of the company came, it having been withdrawn from the company by him, or by his direction, or with his consent, and disbursed without authority and for unlawful purposes, as, if he was not strictly a trustee, he owed to the company the duties of a trustee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1416.]

**3. ACTION—SINGLE OR SEVERAL CAUSES OF ACTION.**

 An action for a general accounting, with the exception of certain items, concerning the property of plaintiff which came into the custody or under the control of defendant as president and trustee of plaintiff, during the time he continuously held such offices, embraces but a single cause of action.

Appeal from Special Term, New York County.

Action by the Mutual Life Insurance Company of New York against Richard A. McCurdy. From an order denying a motion to have the complaint made more definite and certain, and that the statement of facts constituting the several causes of action be separately stated and numbered, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

De Lancey Nicoll (Courtland V. Anable, on the brief), for appellant.

Joseph H. Choate (James McKean and Joseph H. Choate, Jr., on the brief), for respondent.

LAUGHLIN, J.  This is a suit in equity to require the defendant to account for expenditures and disbursements "made, or caused or knowingly permitted to be made, by him or his agents and servants" from moneys received by him, or which came into his custody and possession or under his control, as trustee and president of the plaintiff, for the use and benefit of the plaintiff, not involved in certain actions at law brought by the plaintiff against the defendant.  The plaintiff alleges that on or about the 4th day of June, 1866, pursuant to its charter and by-laws, the defendant was elected trustee of plaintiff for a term of four years, and that by virtue of successive re-elections thereafter he continued to hold the office and act as trustee until the 3d of January, 1906; that on the 3d day of June, 1885, pursuant to the charter and by-laws of the plaintiff, he was elected its president for a term of one year, and thereafter, by virtue of successive annual re-elections, continued to hold office and act as president until the 29th day of November, 1905; that while holding said offices it was his duty, under the charter and by-laws of the company, to conserve its interests and to preserve from waste the property of the company, which was received by him or was under his control, and "to authorize, make, or knowingly or negligently permit to be made, no unlawful or improvident use of the funds of the plaintiff," and to exercise due care and faithfulness in the discharge of his duties, and to account to the plaintiff for its property which came into the hands or under his control; that by virtue of his office, as trustee and president, he personally and through his agents from time to time received and acquired the custody and control in its behalf of large sums of money belonging to the company "in the amounts and at times unknown to the plaintiff"; that large sums of money "so received by the defendant were taken by the defendant, or caused or knowingly permitted by him to be taken, from the treasury of the plaintiff, through a system of false and fraudulent bills and vouchers, which system was concerted between the defendant and certain officers and agents of the plaintiff," and paid out by the disbursing officers and agents of the company with his knowledge;

that by said system the defendant "caused or knowingly permitted the moneys of the plaintiff to be paid out to and received by himself or his agents and servants," and caused or knowingly permitted false and fraudulent entries to be made in the books of the account of the company in accordance with the false bills and vouchers, "and not in accordance with the true disposition made of the sums paid out thereon," and without vouchers therefor, "from time to time made, directed, or unlawfully permitted large expenditures and disbursements of or out of the moneys received by him," and "caused or knowingly permitted entry of such expenditures and disbursements to be omitted" from the books of the company, and from time to time "he delivered, or caused or knowingly permitted to be delivered, to one William G. Gillette, as his agent in the premises, large portions of the moneys received" by him by virtue of his office as president and trustee, from which Gillette from time to time, by direction of the defendant, "made large expenditures and disbursements," retaining the balance as agent of the defendant, no part of which, excepting the sum of $8,000 voluntarily paid by Gillette to the company, has been accounted for; that many of the expenditures and disbursements "made, directed, or knowingly permitted by the defendant and Gillette" were unauthorized, and were for unlawful purposes, but "as to the nature, object, and amounts of the great majority of said expenditures and disbursements, or as to whether any of the said expenditures and disbursements were lawfully chargeable to the company, or as to whether any portion of the said sums received by the defendant as aforesaid" still remain in his hands or under his control, or in the hands or under the control of Gillette or any other servant of the defendant, the plaintiff is without knowledge or information, or means of obtaining knowledge or information.

The suit being in equity against a fiduciary for an accounting, the plaintiff should not be required to make the allegations of the complaint more definite or certain with respect to the sums of money received by the defendant from time to time, or the dates of the receipt thereof, nor with respect to the trust upon which each sum of money was received. The trust is sufficiently shown. The allegations of the complaint with respect to the duty of defendant under the charter and by-laws of the company do not differ materially from the duties which would be imposed upon him by implication of law in assuming to exercise the functions of the office of trustee and president. Hun v. Cary et al., 82 N. Y. 66, 37 Am. Rep. 546. It fairly appears that the facts are alleged as definitely as the knowledge possessed by the plaintiff enables it to state them, and that its inability to set them forth with greater precision is owing to the misconduct of the defendant in falsifying or permitting the falsification of the records, and in omitting to make or cause to be made proper entries in the books of the company. It is alleged that property of the company came into his custody or under his control as trustee and president; that it has been withdrawn from the company by him, or by his direction, or with his consent, and disbursed without authority and for unlawful purposes; and that he has not accounted therefor. Even if he were not strictly a trustee in the circumstances, he owed to the company the duties of a trustee, and

these allegations give a court of equity jurisdiction to require him to account for the property. Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667; O'Brien v. Fitzgerald, 6 App. Div. 509, 39 N. Y. Supp. 707, affirmed 150 N. Y. 572, 44 N. E. 1126; Mabon v. Miller, 81 App. Div. 10, 80 N. Y. Supp. 979.

The learned counsel for the appellant contends that each sum of money or item of property which came into the hands of the defendant, for which he has not accounted, gives rise to a separate cause of action for an accounting as to that specific property, and he demands that the complaint be divided into as many separate causes of action as there are items of property which it is claimed were received by him and for which he has not accounted. We do not agree with this contention. If it be an action for a general accounting by defendant concerning the property of the company which came into his custody or under his control, then it has already been established by precedent that it is a single cause of action. Bosworth v. Allen, 168 N. Y. 157–165, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667. The damages sustained by mere negligence could not be recovered in equity, and it is not at all clear that the actions at law, to which reference is made, embrace any items for which defendant would be accountable in equity. O'Brien v. Fitzgerald, supra; Dykman v. Keeney, 154 N. Y. 483, 48 N. E. 894; Mabon v. Miller, 81 App. Div. 10, 80 N. Y. Supp. 979; Empire State Savings Bank v. Beard, 81 Hun, 184, 30 N. Y. Supp. 756, reversed 151 N. Y. 638, 45 N. E. 1131. If not, then the action is for a general accounting. Assuming, however, that by the reference to the actions at law certain items are eliminated from the accounting, it is difficult to perceive upon what theory an action for a general accounting with the exception of certain items can be deemed to state more causes of action than a complaint for a general accounting, which by not excepting any items embraces more. The defendant held and exercised the functions of the offices continuously, and therefore any matters for which he was accountable to the company in equity, concerning which it desires an accounting, are properly included in a single count.

It follows that the order should be affirmed, with $10 costs and disbursements. All concur.